Robin COWAN and Cary L. Cowan, Plaintiffs,

v.

ERNEST CODELIA, P.C., William Tauber, Peter Shipman and Ernest Codelia, Defendants.

Ernest Codelia, P.C., William Tauber, Peter Shipman and Ernest Codelia, Third–Party Plaintiffs,

v.

Chicago Insurance Company, Third–Party Defendant.

No. 98 CIV. 5548(JGK).

United States District Court, S.D. New York.

July 9, 2001.

**OPINION AND ORDER**

KOELTL, District Judge.

Plaintiffs Robin Cowan and Cary L. Cowan (collectively the "Cowans") bring this

action against Ernest Codelia, P.C., William Tauber ("Tauber"), Peter Shipman ("Shipman"), and Ernest Codelia ("Codelia"). The plaintiffs allege that the defendants violated the Drivers' Privacy Protection Act, 18 U.S.C. § 2721 *et. seq.*, ("DPPA") by obtaining private information regarding the plaintiffs from the vehicle licensing records of the New York State Department of Motor Vehicles ("DMV") for an impermissible purpose. The defendants now move pursuant to Fed.R.Civ.P. 12(c) to dismiss this action under the doctrine of res judicata and pursuant to Fed. R.Civ.P. 56 for summary judgment.

### I.

The same standards apply to a Rule 12(c) motion for judgment on the pleadings and to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999); *Narvarte v. Chase Manhattan Bank, N.A.,* 969 F.Supp. 10, 11 (S.D.N.Y. 1997). The Court "must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." *Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994); *see also Madonna v. United States,* 878 F.2d 62, 65 (2d Cir.1989); *National Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Labs.,* 850 F.2d 904, 909 n. 2 (2d Cir.1988) (indicating that the Court treats a motion for judgment on the pleadings as if it were a motion to dismiss); *Slavsky v. New York City Police Dep't,* 967 F.Supp. 117, 118 (S.D.N.Y.1997), *aff'd,* 159 F.3d 1348 (2d Cir.1998). A court should not dismiss a complaint unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *See Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994) (citing *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In deciding the motion, the Court can consider documents

referenced in the complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied on in bringing suit. *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir. 1991); *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 762 (2d Cir.1991); *Skeete v. IVF America, Inc.,* 972 F.Supp. 206, 208 (S.D.N.Y.1997). The Court can also consider "matters of which judicial notice may be taken." *See Leonard F. v. Israel Discount Bank of New York,* 199 F.3d 99, 107 (2d Cir.1999) (quotation omitted); *see also Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Thus, it is proper to consider public documents on a motion to dismiss to determine whether claims are barred by prior litigation. *See, e.g., Day v. Moscow,* 955 F.2d 807, 811 (2d Cir.1992); *Bal v. New York City Loft Board,* No. 00 Civ. 1112, 2000 WL 890199, at *2 (S.D.N.Y. Jul.5, 2000).

The standard for granting summary judgment is also well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gal-*

*lo,* 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

█ In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223. If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

## II.

The following facts are not in dispute, except where noted. Plaintiff Robin Cowan was at all relevant times an Assistant District Attorney ("ADA") employed by the District Attorney of Bronx County. Plaintiff Cary L. Cowan is the father of Robin Cowan. Defendant Ernest Codelia, P.C., is a professional corporation authorized to practice law in the State of New York. Defendants Tauber, Shipman and Codelia are attorneys, licensed to practice law in the State of New York, and are employees of Ernest Codelia, P.C. (Compl. ¶¶ 7–11; Defs.' 56.1 St. ¶¶ 7–8, 11.)

Robin Cowan was the ADA assigned to prosecute a murder case, *People v. Angel Lopez,* Indictment No. 1877/96 ("*Lopez* case"). Ernest Codelia, P.C. represented, Angel Lopez ("Lopez"), the defendant in that action. Defendants Tauber, Shipman and Codelia each took part in Lopez's defense. (Compl. ¶¶ 12–14, 16; Defs.' 56.1 St. ¶¶ 9–11.) Tauber testified at a suppression hearing in the *Lopez* case as a witness on behalf of Lopez and was cross-examined by Ms. Cowan. (Compl. ¶ 16.)

The plaintiffs allege that on or about March 13, 1998 to March 24, 1998, Tauber directed TML Information Systems, Inc., to perform several computerized searches of DMV records for motor vehicle records of Robin Cowan and Cary L. Cowan, including their residential street addresses, the plaintiffs' dates of birth, and other personal information. (Pls.' 56.1 Counter-St. ¶ 19; Compl. ¶ 17–19; 38). The plaintiffs contend that Tauber's initiation of the searches at issue was done as a joint effort of all the defendants. (Pls.' 56.1 Counter-St. ¶ 1.)

On March 17, 1998, the *Lopez* case was assigned to the Honorable Phyllis Bamberger for trial. Jury selection was completed, the jury was sworn, and the court adjourned the case to Monday, March 23, 1998. (Compl. ¶¶ 22–23.) On Saturday, March 21, 1998, Ms. Cowan allegedly received an empty envelope in the mail at her home address. Ms. Cowan's home address is not listed in the telephone book, and is not otherwise available to the general public. (Compl. ¶¶ 24–25.) It is undisputed that Tauber mailed the envelope to Ms.

Cowan after obtaining her address, through an agent, from the DMV. (Compl. ¶¶ 26, 38; Answer ¶¶ 1, 9.) The envelope sent to Ms. Cowan carried Tauber's return address but not his name. *See In the Matter of William Tauber, Esq.*, RP No. 7006/99, Report of Referee, at 3 (N.Y.App. Div. July 12, 1999).

Ms. Cowan allegedly immediately called Tauber to determine whether he had mailed the empty envelope, and if so, why. (Compl.¶ 27.) The plaintiffs allege that, at that time, Tauber advised Ms. Cowan that he wanted to determine if Ms. Cowan really lived in New York City and that Tauber also indicated he had done so to "pay her back" for having vigorously cross-examined Tauber when he testified at the suppression hearing in the *Lopez* case. (Compl.¶ 28–29.) Although the defendants do not dispute that Tauber caused a search to be made of the DMV records, they contend that Tauber caused the search to be made to confirm whether or not Robin Cowan was a bona fide resident of the City of New York. (Defs.' 56.1 St. ¶ 18.) The defendants argue that N.Y. Public Officers Law § 3 requires that Bronx ADAs reside within the City of New York and that, in the absence of compliance with that law, an ADA is not qualified to serve and may be removed. (Defs.' 56.1 St. ¶¶ 13–14.)

Ms. Cowan notified her supervisor, Edward Friedenthal, and he in turn reported the incident to Justice Bamberger, who was presiding over the *Lopez* case. (Compl. ¶ 31; Defs.' 56.1 St. ¶ 20.) A disciplinary proceeding before the New York State Supreme Court, Appellate Division, First Department Departmental Disciplinary Committee ("Departmental Disciplinary Committee") was initiated against Tauber on the basis of the incident.

(Defs.' 56.1 St. ¶ 20; Pls.' 56.1 Counter–St. ¶ 20.) After holding a series of hearings on the matter, the referee appointed to review the allegations credited Tauber's account and recommended that the charges be dismissed. *See In the Matter of William Tauber, Esq.*, RP No. 7006/99, Report of Referee (N.Y.App.Div. July 12, 1999). A hearing panel of the Departmental Disciplinary Committee concurred in the referee's determination that the charges should be dismissed. *See In the Matter of William Tauber, Esq.*, RP No. 3006/99 [1], Determination of Hearing Panel (N.Y.App.Div. Aug. 11, 1999) (Both decisions are attached as Ex. D of Affirmation of Roberto Lebron dated October 4, 2000 ("Lebron Aff.")).

The plaintiffs filed this action on August 5, 1998 asserting two causes of action. In the plaintiffs' first cause of action, the Cowans allege that the defendants violated the DPPA. (Compl.¶¶ 12–44.) In the second cause of action, plaintiff Robin Cowan alleged that the defendants engaged in outrageous conduct causing emotional distress. (Compl.¶¶ 45–54.) On March 16, 1999, plaintiff Robin Cowan filed an action in New York State Supreme Court, New York County, against the same defendants also alleging outrageous conduct causing emotional distress ("State Court Action"). (Defs.' 56.1 St. ¶ 3 & Ex. B.) The State Court Action was dismissed by orders dated June 30 and July 31, 2000, and judgment was entered on September 1, 2000. (Defs.' 56.1 St. ¶ 3 & Ex. C.) Thereafter, on September 18, 2000, Ms. Cowan withdrew her second cause of action in this case. (Defs.' 56.1 St. ¶ 3 & Ex. D.)

### III.

The defendants first move pursuant to Fed.R.Civ.P. 12(c) to dismiss the complaint

---

1. The Referee's Report carries docket number 7006/99; the Hearing Panel's determination carries docket number 3006/99.

on the ground that the plaintiffs' DPPA claims are barred by res judicata or claim preclusion because Ms. Cowan could have raised the DPPA claim in the State Court Action. Res judicata bars "subsequent litigation of any ground of recovery that was available in the prior action, whether or not it was actually litigated or determined." *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 62 (2d Cir. 1989); *accord Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir.1994); *Greenberg v. Board of Governors of the Fed. Reserve Sys.*, 968 F.2d 164, 168 (2d Cir.1992). It acts to protect "litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore, Inc.*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Res judicata ensures the conclusiveness of judgments and thus "secure[s] the peace and repose of society by the settlement of matters capable of judicial determination." *Nevada v. United States*, 463 U.S. 110, 129, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (internal quotation omitted).

A federal court must give the same preclusive effect to a state court decision as a state court would give it. *See* 28 U.S.C. § 1738; *Brooks v. Giuliani*, 84 F.3d 1454, 1463 (2d Cir.1996); *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir.1994) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)); *Hennessy v. Cement and Concrete Worker's Union Local 18A*, 963 F.Supp. 334, 337–38 (S.D.N.Y. 1997). Thus, the binding effect on this Court of the proceedings in the plaintiff's prior New York State Court Action proceeding is governed by New York res judicata doctrine.

Under New York law, the transactional approach to res judicata prevents parties to the prior action or those in privity with them "from raising in a subsequent proceeding any claim they could have raised in the prior one, where all of the claims arise from the same underlying transaction." *Schulz*, 44 F.3d at 53 (citing *Reilly v. Reid*, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (N.Y.1978)); *accord Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir.1997); *Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir.1997) (collecting New York cases); *Brooks*, 84 F.3d at 1463 (citing *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 445 N.Y.S.2d 687, 429 N.E.2d 1158, 1159 (N.Y.1981)); *Hennessy*, 963 F.Supp. at 338; *Parker v. Blauvelt Volunteer Fire Co., Inc.*, 93 N.Y.2d 343, 690 N.Y.S.2d 478, 712 N.E.2d 647, 649–50 (N.Y.1999); *Smith v. Russell Sage College*, 54 N.Y.2d 185, 445 N.Y.S.2d 68, 429 N.E.2d 746, 749 (N.Y. 1981). New York courts have held that res judicata principles are not to be applied "mechanically;" rather "the analysis requires consideration of the 'realities of the litigation.'" *Nat'l Fuel Gas Distribution Corp. v. TGX Corp.*, 950 F.2d 829, 839 (2d Cir.1991) (quoting *Staatsburg Water Co. v. Staatsburg Fire Dist.*, 72 N.Y.2d 147, 531 N.Y.S.2d 876, 527 N.E.2d 754, 756 (N.Y.1988) (quotations omitted)).

### A.

The plaintiffs first argue that the defendants waived a res judicata argument because res judicata is an affirmative defense and the defendants failed to raise it in their answer. In general, a party that does not raise an affirmative defense of res judicata in responsive pleadings waives the right to assert the defense. *See* Fed. R.Civ.P. 8(c); *Morrison v. Blitz*, No. 88 Civ. 5607, 1995 WL 679259, at *3 (S.D.N.Y. Nov.15, 1995); *Allen v. Men's World Outlet, Inc.*, 679 F.Supp. 360, 365 (S.D.N.Y. 1988). A district court, however, "has the discretion to entertain the defense when it

is raised in a motion for summary judgment, by construing the motion as one to amend the [defendants'] answer." *Monahan v. New York City Department of Corrections*, 214 F.3d 275, 283 (2d Cir.) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993)), *cert. denied*, —— U.S. ——, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000); *see also Morrison*, 1995 WL 679259, at *3; *Carino v. Town of Deerfield*, 750 F.Supp. 1156, 1162 n. 9 (N.D.N.Y.1990), *aff'd*, 940 F.2d 649 (2d Cir. 1991). Courts have been especially flexible where the defense of res judicata was not available at the pleading stage because the other action had not yet been concluded. *See Morrison*, 1995 WL 679259, at *3 (collecting cases); *Kendall v. Avon Prod., Inc.*, 711 F.Supp. 1178, 1179 n. 2 (1989). In this case the defendants have explicitly relied on Fed.R.Civ.P. 12(c) in raising the res judicata defense. The fact that the defendants bring this motion under Rule 12(c), however, does not affect the Court's ability to entertain the res judicata defense in this case where the facts of the State Court Action are undisputed.

Fed.R.Civ.P. 15 provides that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15. The Court of Appeals for the Second Circuit recently stated that Rule 15:

> reflects two of the most important principles behind the Federal Rules [of Civil Procedure]: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated, ... and "mere technicalities" should not prevent cases from being decided on the merits.... Thus, absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed.

*Monahan*, 214 F.3d at 283 (citations omitted); *see also Block*, 988 F.2d at 350.

■ In this case, res judicata was unavailable to the defendants when they answered the plaintiffs' complaint on September 9, 1998 and when they filed their amended answer on November 16, 1999. The State Court Action was dismissed by orders dated June 30 and July 31, 2000 and judgment was entered in the State Court Action on September 1, 2000. Thus, the defendants cannot be faulted for having failed to raise the res judicata defense in their answer or amended answer. In addition, the defendants filed this motion on October 6, 2000, asserting the defense within a reasonable period of time after the defense became available, the plaintiffs have had an adequate opportunity to respond to the res judicata defense, and the plaintiffs have not provided any evidence that they have suffered any undue prejudice as a result of the defendants asserting the defense now. *See Morrison*, 1995 WL 679259, at *3; *Carino*, 750 F.Supp. at 1162 n. 9. Thus, the defendants have not waived the defense of res judicata by failing to assert it in their answer or amended answer.

### B.

■ The plaintiffs next argue that the Court should not consider the defense of res judicata because the State Court Action was filed subsequent to the federal action and was thus not a prior action. This argument is without merit. For purposes of res judicata, "the effective date of a final judgment is the date of its rendition, without regard to the date of commencement of the action in which it is rendered or the action in which it is to be given effect." Restatement (Second) of Judgments § 14; *see also Williams v. Ward*, 556 F.2d 1143, 1154 (2d Cir.1977); *Forte v. Kaneka America Corp.*, 110

A.D.2d 81, 493 N.Y.S.2d 180, 183 (App.Div. 1985). Thus, all that is required for the operation of res judicata is that final judgment in an action precede judgment in the pending action. In this case, the judgment in the State Court Action became final on September 1, 2000, and the fact that Ms. Cowan filed the State Court Action subsequent to the plaintiffs' filing of the federal action does not prevent the judgment in the State Court Action from having res judicata effect.

### C.

Finally, however, the plaintiffs successfully argue that the defendants waived the res judicata defense by acquiescing to Ms. Cowan's splitting her claims by bringing them in different courts. "The rule prohibiting claim splitting prohibits two actions on the same claim or parts thereof." *Charles E.S. McLeod, Inc. v. R.B. Hamilton Moving and Storage*, 89 A.D.2d 863, 453 N.Y.S.2d 251 (1982). Section 26(1)(a) of the Restatement (Second) of Judgments (1982) recognizes an exception to the general rule prohibiting claim splitting and applying res judicata to such claims where "[t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein." Restatement (Second) of Judgments § 26(1)(a). Thus:

> Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

Restatement (Second) of Judgments § 26 cmt. a (1982).

The New York Court of Appeals has neither adopted nor rejected Section 26(1)(a). Where state law is to be applied, in the absence of a plain ruling from the state's highest court, a federal court must strive to predict how the state's highest court would rule if the issue were before it. *See Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir.2000); *Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 47–48 (2d Cir.1993); *United States ex rel. Mikes v. Straus*, 897 F.Supp. 805, 807 (S.D.N.Y.1995). In determining whether the New York Court of Appeals would adopt the approach taken in Section 26(1)(a) if given the opportunity to do so, the decisions of New York State's Appellate Division "are entitled to persuasive, if not decisive consideration." *Sphere Drake Ins. Co. v. P.B.L. Entertainment, Inc.*, 30 F.3d 21, 23 (2d Cir.1994) (citation omitted), *vacated on other grounds*, 52 F.3d 22 (2d Cir.1995); *see also West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940) (finding that the holding of "an intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise"); *Michalski*, 225 F.3d at 116. The Court is also free to consider all of the resources to which the New York Court of Appeals could look, including "relevant case law from other jurisdictions on the same or analogous issues, scholarly writings in the field, and any other resources available to the state's highest court." *Michalski*, 225 F.3d at 116; *Leon's Bakery*, 990 F.2d at 48.

In *Brown v. Lockwood*, 76 A.D.2d 721, 432 N.Y.S.2d 186 (App.Div.1980), the New York State Supreme Court, Appellate Division, Second Department, relied on Sec-

tion 26(1)(a) in concluding that the defendant acquiesced to the plaintiff's claim splitting and was thus barred from asserting the defense of res judicata. *Brown,* 432 N.Y.S.2d at 199–200.[2] As the Appellate Division explained: "The purpose of the doctrine of res judicata is to provide finality in the resolution of disputes to assure that parties may not be vexed by further litigation. The rule having been designed to protect defendants from being vexed by multiple suits, it stands to reason that acquiescence by the defendant will work a waiver." *Id.* at 199, 76 A.D.2d 721 (internal citations omitted). In *Kendall v. Avon Prod., Inc.,* 711 F.Supp. 1178 (S.D.N.Y.1989), in interpreting New York's res judicata law, Judge Stewart of this Court also applied Section 26(1)(a) and concluded that the defendant waived a res judicata defense by failing to object to the plaintiff's claims in either of the plaintiff's simultaneous actions on the basis that another action was pending based on the same claim. *See Kendall,* 711 F.Supp. at 1182.

Numerous other courts have specifically relied on Section 26(1)(a) in applying principles of res judicata. *See, e.g., Klipsch, Inc. v. WWR Tech., Inc.,* 127 F.3d 729, 734–35 (8th Cir.1997); *In re Super Van, Inc.,* 92 F.3d 366, 371 (5th Cir.1996); *Bradley v. Pittsburgh Board of Educ.,* 913 F.2d 1064, 1072–73 (3rd Cir.1990); *Kern Oil & Refining Co. v. Tenneco Oil Co.,* 840 F.2d 730, 735 (9th Cir.1988); *Calderon Rosado v. General Electric Circuit Breakers, Inc.,* 805 F.2d 1085, 1087 (1st Cir.1986); *Subryan v. Regents of University of Colorado,* 813 F.Supp. 753, 757–58 (D.Col. 1993); *Chestnut Hill Dev. Corp. v. Otis Elevator Co.,* 739 F.Supp. 692, 701 (D.Mass.1990). In addition, the New York Court of Appeals has relied on other exclu-

sions to the general rule against claim splitting set forth in Section 26. *See Parker,* 690 N.Y.S.2d 478, 712 N.E.2d at 650–51 (relying on Sections 26(1)(b) and (c)); *Hodes v. Axelrod,* 70 N.Y.2d 364, 520 N.Y.S.2d 933, 515 N.E.2d 612, 617 (N.Y. 1987) (relying on Section 26(1)(d)). Accordingly, the Court concludes that the acquiescence rule stated in Section 26(1)(a) of the Restatement (Second) of Judgments is an accurate statement of the law in New York.

■ In this case, despite having ample opportunity to do so, the defendants did not at any time object to Ms. Cowan's splitting of her claims prior to entry of judgment in the State Court Action. Although the defendants' counsel indicated to this Court during argument on a prior motion that Ms. Cowan had commenced another action in state court based on the same allegations as in her second cause of action in the federal action, the defendants did not file a motion raising the issue despite the Court's invitation to do so. (Transcript dated April 30, 1999 ("April 30, 1999 Tr.") at 18–19.) In addition, the defendants could have objected to the maintenance of the State Court Action by moving to dismiss pursuant to N.Y. CPLR § 3211(a)(4) upon the ground that there was "another action pending between the same parties for the same cause of action in a court of any state or the United States." N.Y. CPLR § 3211(a)(4). The defendants chose to pursue their defense of the State Court Action in which there was no DPPA claim. Thus, by failing to object to Ms. Cowan's claim splitting the defendants acquiesced in the splitting of her claims between federal and state court and the defendants are not now permitted to assert in this action the defense of res

**2.** At the time that *Brown* was decided the Restatements (Second) of Judgments was in

tentative draft form and Section 26 was then called proposed section 61.2.

judicata based on the result in the State Court Action.

 Moreover, the defendants could not, in any event, successfully invoke the res judicata doctrine against Cary Cowan because he was neither a party nor in privity with Robin Cowan in the State Court Action. Under New York state law, privity is an amorphous concept not easily applied and the term does not have a technical and well-defined meaning. *See In re Juan C.*, 89 N.Y.2d 659, 657 N.Y.S.2d 581, 679 N.E.2d 1061, 1065 (N.Y.1997) (citations omitted); *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 317 N.Y.S.2d 315, 265 N.E.2d 739, 743 (1970). In general, to establish privity between parties, the connection between the parties must be such that the interests of the party that was not present in the prior proceeding can be said to have been represented in the prior proceeding. *See Green v. Santa Fe Industries, Inc.*, 70 N.Y.2d 244, 519 N.Y.S.2d 793, 514 N.E.2d 105, 108 (N.Y.1987); *see also In re Juan C.*, 657 N.Y.S.2d 581, 679 N.E.2d at 1065. In determining whether parties have an identity of interests New York courts permit "flexible consideration of whether all of the facts and circumstances of the party's and nonparty's actual relationship, their mutuality of interests and the manner in which the nonparty's interests were represented in the [previously decided] litigation establishes a functional representation such that the nonparty may be thought to have had a vicarious

day in court." *In re Slocum,* 183 A.D.2d 102, 588 N.Y.S.2d 930, 931 (App.Div.1992).

 In this case, Mr. Cowan was not a party in the State Court Action, his interests are different from Ms. Cowan's and his interests were not fully represented by Ms. Cowan in the State Court Action. The DPPA claims asserted in this action were not litigated at all in the State Court Action such that it may be thought that Mr. Cowan had his day in court. The issues in the State Court Action involved Ms. Cowan's allegation of the intentional infliction of emotional distress, a claim that was individual to Ms. Cowan and has never been asserted in either action on behalf of Mr. Cowan. In addition, Mr. Cowan's DPPA claim relies upon DMV searches separate from those in Ms. Cowan's DPPA claim and the facts surrounding Mr. Cowan's DPPA claim would not necessarily be relevant to Ms. Cowan's claim had it been raised in the State Court Action. Thus, privity between Ms. Cowan and Mr. Cowan has not been established and, therefore, res judicata does not bar his DPPA claim.[3]

### IV.

The defendants also move pursuant to Fed.R.Civ.P. 56 for summary judgment on the plaintiffs' DPPA claims.

The DPPA regulates the dissemination and use of "personal information" contained in state motor vehicle records.[4]

---

3. In arguing that Mr. Cowan and Ms. Cowan are in privity, the defendants rely on the fact that the attorney who represented Ms. Cowan in the State Court Action also represents the plaintiffs in this action. Although the fact that the same attorney represented the parties in both actions is of "singular significance," *Watts,* 317 N.Y.S.2d 315, 265 N.E.2d at 744, it is not conclusive on the issue of privity. *See Ruiz v. Commissioner of Dept. of Transp.,* 858 F.2d 898, 903 (2d Cir.1988).

4. The DPPA defines "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

Under the DPPA, it is "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722(a). The DPPA provides for a civil cause of action against "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter...." 18 U.S.C. § 2724(a). To establish a claim under the DPPA the plaintiffs must establish: (1) that the defendants caused a DMV search to be made as to each plaintiff and (2) that the search was not permitted by any exception to the DPPA.

The defendants argue that Tauber caused the DMV search of Ms. Cowan's address to be made to confirm whether or not Robin Cowan was a bona fide resident of the City of New York. They assert that this purpose falls within the provision of the DPPA permitting individuals to obtain personal information from motor vehicle records "[f]or use in connection with any ... criminal ... proceeding in any Federal, State, or local court." 18 U.S.C. § 2721(b)(4). The plaintiffs, however, point to evidence that Tauber's search of Ms. Cowan's DMV records was motivated

by purely personal reasons. Specifically, they point to Tauber's statement to Justice Bamberger:

> I was upset that [Ms. Cowan] would attack my person credibility on the witness stand. That I would make up a story just to protect a client, I wouldn't do. And it's sort of a personal thing.

(Affirmation of Richard W. Berne ("Berne Aff."), Ex. C.) In addition, Ms. Cowan alleges that Tauber told her on the phone that he sent her the envelope to get back at Ms. Cowan for her examination of Tauber at the suppression hearing. (Lebron Aff. Ex. J at 88.)

 The defendants argue that the finding by the referee in Tauber's disciplinary proceedings that Ms. Cowan's allegation that Tauber made such a statement was not credible renders the allegation insufficient to create a genuine issue of material fact in this action. The defendants, however, have not argued that the referee's decision in the state court disciplinary proceeding and the Departmental Disciplinary Committee's affirmance of the referee's decision have res judicata or collateral estoppel effect in this action and it is not the Court's role to weigh credibility on a summary judgment motion.[5]

5. Although the defendants do not argue that the decision of the Departmental Disciplinary Committee dismissing the charges against Tauber has res judicata or collateral estoppel effect in the present action, the defendants argue that this Court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine to reverse or modify a state court decision. The defendants argue that the decision of the Departmental Disciplinary Committee is such a state court decision.

Under the *Rooker–Feldman* doctrine, a federal district court does not have jurisdiction over a case that seeks to reverse or modify a state court decision. Such federal review may only be obtained in the Supreme Court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303,

75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir.1998). Presuming that the decision of the Departmental Disciplinary Committee dismissing the charges against Tauber is a state court judicial decision, *see, e.g., Sassower v. Mangano*, 927 F.Supp. 113, 119 (S.D.N.Y.1996) (finding that *Rooker–Feldman* doctrine barred an attorney from prosecuting a civil rights claim where the claims were based on the state court suspension of her attorney's licence), *aff'd*, 122 F.3d 1057 (2d Cir.1997); *see also Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (finding that proceedings before a court asking for a waiver of the court's bar admission rules were judicial in nature), nothing in the present action seeks to reverse or modify the

█ The defendants also argue that the permissible disclosure discussed in 18 U.S.C. § 2724(b)(4) does not include a "good faith" requirement and thus, in effect, that obtaining DMV records for any use that pertains to a criminal proceeding is permissible under the DPPA. However, as this Court previously noted in denying a motion to dismiss:

[I]f the defendants intended to use the DMV information to threaten the plaintiffs, that use would not reasonably come within the permissible "use" defined in the statute. Simply because a criminal case was pending, the private, allegedly vindictive use of the information to threaten opposing counsel would not be a "use" in connection with a criminal case.

(April 30, 1999 Tr. at 39–40.) In this case, a reasonable juror could find that the DMV searches and the subsequent sending of the envelope to Ms. Cowan's residence was not for use in connection with a criminal proceeding but rather was to threaten or harass her for personal reasons. Thus, summary judgment on Ms. Cowan's DPPA claim is inappropriate.

Moreover, the defendants have not provided a justification under the DPPA for obtaining the address of Cary Cowan sufficient to determine as a matter of law that Tauber's search of Mr. Cowan's address did not violate the DPPA. Mr. Cowan was not involved in the *Lopez* case and the DMV information obtained about him does not appear to have been relevant to any potential motion in that case and therefore, summary judgment on Mr. Cowan's DPPA claim is inappropriate.

█ The defendants Codelia and Shipman move for summary judgment arguing that there is no evidence that they were responsible for obtaining information about the plaintiffs from the DMV. However, as this Court noted in its prior decision

---

decision of the Departmental Disciplinary Committee. Regardless of the result of the present action, the Departmental Disciplinary Committee has determined that Tauber will not be disciplined professionally and nothing that may occur in this action will alter that result.

The *Rooker–Feldman* doctrine has been applied to hold that a federal district court lacks subject matter jurisdiction over claims that are "inextricably intertwined" with a state court's determinations. *See Moccio*, 95 F.3d 195, 198 (2d Cir.1996). The Court of Appeals for the Second Circuit has interpreted the term "inextricably intertwined" to be co-extensive with the law of preclusion. "We agree that the Supreme Court's use of 'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either plaintiff or defendant in that proceeding), subsequent litigation of that claim would be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Moccio*, 95 F.3d at 199–200.

In this case, however, the defendants specifically do not argue that the law of preclusion applies to the decision of the Departmental Discipline Committee. Moreover, neither of the plaintiffs were parties to the state disciplinary proceedings because private individuals are not the proper parties to such disciplinary proceedings. *See, e.g., In re Anonymous*, 20 A.D.2d 819, 248 N.Y.S.2d 786 (App.Div.1964). Indeed, the matter was referred to the Departmental Disciplinary Committee by Justice Bamberger (Reply Affirmation of Roberto Lebron dated November 21, 2000 at ¶ 20), and was investigated by the Departmental Disciplinary Committee's Chief Counsel. *See* N.Y. Comp.Codes R. & Regs. tit. 22, § 605.6. The charges were brought by the Office of Chief Counsel for the Departmental Disciplinary Committee. (*See* N.Y. Comp.Codes R. & Regs. tit. 22, § 605.12(a); Lebron Aff. Ex. C.) Neither of the plaintiffs had any power to seek review of the Departmental Disciplinary Committee's decision in the United States Supreme Court. Thus, this action is not "inextricably intertwined" with the state disciplinary proceeding and the *Rooker–Feldman* doctrine does not divest this Court of subject matter jurisdiction.

denying summary judgment, there are genuine issues of material fact that preclude the entry of summary judgment in favor of Codelia and Shipman. (April 30, 1999 Tr. at 28.) Codelia admits that he advised William Tauber to follow up on his theory as to Robin Cowan's residence, raising an issue of fact with respect to his responsibility for Tauber's decision to obtain the DMV information. (Pl.'s Ex. E.) In addition, although Shipman does not recall having any discussions with Tauber about DMV searches or sending correspondence to Ms. Cowan (Berne Aff. Ex. F), Tauber admits that he told Shipman he was sending Ms. Cowan correspondence and that he and Shipman discussed New York Public Officers Law § 3. (Berne Aff. Ex. D at 41–42.) Thus, there are genuine issues of material fact concerning whether Codelia and Shipman caused Tauber to have the DMV searches conducted and their motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, the defendants' motions brought pursuant to Fed. R.Civ.P. 12(c) to dismiss this action and pursuant to Fed.R.Civ.P. 56 for summary judgment are denied.

**SO ORDERED.**